sion, and that an extension will be necessary. They have the right to take into consideration all the circumstances, the probable growth, the convenience of the people, and the fact that there is a territory beyond the 1,500 feet which at an early day must be accommodated, and that it can only be accommodated after this 1,500 feet is built upon. In my judgment, therefore, it was immaterial whether there is or is not a right of way along the proposed future extension. The fact that there is territory there upon which a road should or may be built is material, and one of the circumstances proper to be considered. If the petitioner owns the right of way, perhaps the road might be built earlier than it otherwise would. If it did not own it, it would have to acquire it. I see no error in that direction.

The Plank Road Company formerly operated its road over a part of this 1,500 feet, and by chapter 445, p. 477, of the Laws of 1876, it was authorized to convey that part of its road to the commissioners of Washington Park, and they were required to improve that portion of the road 'as an approach' to the park; the statute providing:

"But nothing herein contained shall be construed as authorizing said commissioners to close the said portion of the said road or to exclude the public from the use thereof as a highway."

It was conveyed, and the park commissioners improved the road, planting trees alongside of it, paving it with stone blocks, and made it a high-class street approaching the park. The point in question is nearly a mile distant from the park. It is claimed that this part of the street thereby became a part of the park system, and not subject to condemnation for street railway purposes. It is assumed that, if it is a park, it is not the subject of condemnation for this purpose. But clearly it is not a park. It is subject to the highway law of the city, and is simply a street, improved a little more than other streets, because it approaches and is a good driveway to the park.

A consideration of the whole case shows no error to the prejudice of the property owners. The determination of the commissioners is therefore confirmed. All concur.

---

OVENSHIRE v. SECURITY MUT. LIFE INS. CO. OF BINGHAMTON, N. Y.

(Supreme Court, Special Term, Broome County. May 17, 1907.)

1. INSURANCE—ACTION ON POLICY—COMPLAINT—SETTING FORTH POLICY.
    Where, in an action brought by a policy holder, the basis of which was the contract entered into between the policy holder and the life insurance company issuing the policy, it was simply alleged that the company executed and delivered the policy in a certain amount, payable to a beneficiary named, and there was no allegation that the company had agreed to pay the beneficiary any sum of money whatever, either upon the death of the policy holder or upon any other contingency, nor from which it could be inferred that either the policy holder or the beneficiary would at any time be entitled to receive any money or other benefit from the company, the complaint was fatally defective, as failing to show any valid contract between the policy holder and the company.
    [Ed. Note.—For cases in point, see Cent. Dig. vol. 28, Insurance, § 1588.]

2. SAME.

Where, in an action by a policy holder against a life insurance company, though the manner and method by which the insurance company took over the business of another insurance company which had issued the policy was a material fact in the policy holder's cause of action, it was simply alleged that the defendant insurance company had taken over the business of the other company and assumed all the contracts of insurance then outstanding, the complaint was fatally defective, as failing to show, if the two insurance companies were distinct corporations and the taking over was by contract, the substance of that contract, or if they were the same corporation, except that there had been a reorganization effected under Laws 1893, p. 1718, c. 690, being sections 70a, 70b, and 70c of the insurance law, that the taking over was by operation of law, pursuant to section 70c, providing that the reorganized company shall be entitled to the assets and shall be subject to the existing liabilities of the old company.

Action by Clarence L. Ovenshire, suing in behalf of himself and all other policy holders of the Security Mutual Life Association of Binghamton, N. Y., similarly situated, against Security Mutual Life Insurance Company. Defendant demurred to the complaint. Demurrer sustained.

S. Mach Smith, for plaintiff.

J. W. Jenkins (Hinman, Howard & Kattell, of counsel), for defendant.

COMAN, J. This is an equitable action, brought by the plaintiff in behalf of himself and all other policy holders similarly situated, for the purpose of compelling an accounting by the defendant for certain moneys claimed to have been received by it from the Security Mutual Life Association of Binghamton, N. Y., and from the members of said association, since the incorporation of the defendant; to require the defendant to issue to this plaintiff and his associates bonds or other evidence of the amounts due to each of them for the dividends due to them; and that the rights of the parties be ascertained and the contract made between the plaintiff and the Security Mutual Life Association of Binghamton, N. Y., and assumed by this defendant, be construed, and the defendant be restrained and enjoined from demanding any other or different premium than that named in the policy. The defendant demurs to the complaint upon numerous grounds, only one of which I shall consider, viz., that the complaint does not state facts sufficient to constitute a cause of action.

The first count of the complaint alleges that the defendant now is, and has been since in or about the year 1899, a domestic corporation, formed, organized, and existing under and by virtue of article 2 of the insurance laws of the state of New York (Laws 1892, p. 1958), and engaged in this state and elsewhere in the life insurance business. The second count of the complaint alleges that the Security Mutual Life Association of Binghamton, N. Y., was a domestic corporation, formed, organized and existing under and by virtue of chapter 175, p. 172, of the Laws of 1883 of the state of New York, on or about the 6th day of November, 1886, and from the time of its said incorporation up until in or about the year 1898, it continued to exist under said laws and the acts amendatory thereof, and received members

and issued certificates or policies of life insurance as such.   The third
count of the complaint sets forth certain by-laws, adopted by said as-
sociation, with respect to the management and control of the mort-
uary fund and the reserve fund of said association and the purposes
for which said funds should be applied.   The fourth count of the
complaint alleges that during the existence of said association it re-
ceived a large number of members, to each of whom it issued a policy
of insurance, and that it received from such policy holders a large
amount of money as premiums, and that at the termination of the
business of said association it had about 12,000 members, with poli-
cies in force for various amounts, and had in its treasury about $600,-
000, belonging to the members of such association, which, under the
statutes and by-laws governing the said association, could be used on-
ly as provided in the by-laws quoted in the third count of the com-
plaint.   The fifth count of the complaint alleges that on or about
the 23d day of October, 1895—

"plaintiff became a member of said association, and on that day the said
association made, executed, and delivered to him its certain policy of insur-
ance, dated on that day, and signed by its president and secretary, and under
the seal of the association, numbered 13.580, and in the amount of $2,000, pay-
able to Sarah Ovenshire, the wife of the plaintiff, and in and by which the
plaintiff was to pay the quarterly premium of $13.46; and it was further
provided, in accordance with the by-laws of the association, that the plain-
tiff be credited with his proportion of said reserve fund, set aside under said
by-laws, which said policy is hereby referred to and made a part of this com-
plaint as though fully set forth herein, when it shall be produced upon the
trial of this action, and this plaintiff is now the owner and holder of said
policy, which is now and always has been in full force and effect."

The sixth count of the complaint alleges that the moneys paid by
the members to such association as provided by their by-laws, 75 per
cent. of which was to be set aside to provide for mortuary losses, was
more than sufficient each year during the life of the association, and
also since defendant took over these policies, to meet its mortuary
calls, and that when the said association discontinued its business in
1898 it had a large amount of money in its mortuary fund, and that
the other portion of the premiums of the members, the 25 per cent.
which was to create a reserve fund, was in the hands of said associa-
tion, and that both funds amounted in the aggregate to about $600,-
000, which money had all been contributed by the plaintiff and his
associates.   The seventh count of the complaint reads as follows:

"Upon information and belief, that in or about the year 1899 this defend-
ant took over the business of said association and assumed all the contracts
of life insurance of the old associates then outstanding, together with this
plaintiff's said policy, and also took over all the moneys of the said associa-
tion, including the mortuary fund and the reserve fund, of about $600,000, as
before mentioned, and this plaintiff and his associates have continued from
said date to pay to this defendant the premiums upon said policies of in-
surance, until the fund now in the hands of this defendant, belonging to this
plaintiff and his said associates, exceeds $1,000,000."

The eighth count of the complaint alleges that, under the statutes
and by-laws of the association and the contract with the members,
the reserve fund was to be apportioned among the members each five

years of the continued existence of their policies, or annually after ten years, and that no money should be withdrawn from said reserve fund except as provided by the by-laws, and no part of it was to be used for expenses of management of the association, but that, notwithstanding this, no moneys have ever been so apportioned to the members. The ninth count of the complaint alleges that the defendant has demanded and received from the plaintiff, since about the year 1905, larger premiums than those called for by the policy, and continues to increase and threatens to increase the same in the future, and has done the same with other members of the association, and denies that the plaintiff or his associates have any interest whatever in the reserve fund aforesaid, and refuses and neglects to declare any dividend or issue any bonds as provided by said contracts of insurance and by the by-laws of said association. The tenth count alleges that the defendant has threatened the forfeiture of the policy of the plaintiff if he does not pay the increased premiums demanded, and that the plaintiff is without adequate remedy at law.

I have thus set out very fully the allegations of the complaint, and after a full consideration of all of them I have reached the conclusion that it does not state facts sufficient to constitute a cause of action. The basis of this action is a contract entered into between the plaintiff and the association. That contract consisted of a policy or certificate of insurance, and also of the statutes of this state respecting such policy, and the by-laws of the association duly adopted with respect to it. The court will take judicial notice of the statutes affecting the policy, and the by-laws relating to it are set out in full in the third count of the complaint; but the certificate or policy, which formed an essential part of the contract between the plaintiff and the association, is not made a part of the complaint, and neither are its material provisions recited therein. There is no allegation in the complaint that the association ever agreed to pay to Sarah Ovenshire, the wife of the plaintiff, any sum of money whatever, either upon the death of the plaintiff or upon the happening of any other contingency. There is no allegation in the complaint of any fact from which the court could infer that either the plaintiff or his wife, by the terms of the contract between the association and the plaintiff, would at any time be entitled to receive any money or other benefit from said association. So far as the terms of the contract are concerned, there is only the bare allegation that on a certain day the association executed and delivered to the plaintiff its certain policy of insurance, dated on that day, and signed by its president and secretary, and under the seal of the association, numbered 13,580, and in the amount of $2,000, payable to Sarah Ovenshire, the wife of the plaintiff.

There is a total failure to set out in this complaint any valid contract between the plaintiff and the association. The situation is as though an action were to be brought upon a promissory note, upon a bare allegation that upon a certain day the defendant executed and delivered to the plaintiff his promissory note for $2,000, without any allegation whatever as to the payee of the note, or the time or place or conditions of its payment. It seems to me that the case of Todd v.

Union Casualty & Surety Co., 70 App. Div. 52, 74 N. Y. Supp. 1062, is decisive of this question. That was an action to recover upon a policy of insurance, and the terms of the policy were much more fully and elaborately set out in the complaint in that action than in this. The demurrer to the complaint was sustained upon the ground that it did not allege facts sufficient to constitute a cause of action. The plaintiff seeks to avoid the effect of this decision upon the ground that this action is not an action at law to recover upon the policy itself; but I can see no force to this contention, because, as I have already stated, the policy or certificate of insurance referred to is a material and vital part of the contract which forms the basis of this action.

It seems clear that there is an equally fatal defect in the allegations of the complaint as to the assumption of the old contracts of the association by the defendant in this action. My impression is that it was stated upon the oral argument of this case that the defendant came into existence pursuant to the provisions of chapter 690, p. 1718, of the Laws of 1893, which constitutes sections 70a, 70b, and 70c of the insurance law; but, if so, there is a total failure to allege that fact in the complaint. The only allegation upon this subject is contained in the seventh count of the complaint, and is as follows:

"Upon information and belief, that in or about the year 1899 this defendant took over the business of said association and assumed all the contracts of life insurance of the old associates then outstanding, together with this plaintiff's said policy of insurance, and also took over all the moneys of said association, including the mortuary fund and the reserve fund, of about $600,000, as before mentioned."

Whether this "taking over" of the business of the old association and assumption of all the contracts of life insurance of the old associates was effected by a contract entered into between the defendant and the old association, or was effected by operation of law, pursuant to the statute above referred to, does not appear. As the complaint stands, it would appear that the defendant and the former association were distinct entities; while the fact, as stated upon the oral argument, is that the defendant and the former association are the same corporation, except that there has been a reorganization effected under the provisions of section 70a et seq. of the insurance law. If the latter is the fact, then no contract was necessary, because, under the provisions of section 70c, the new or reorganized company became, by operation of law, entitled to all the assets of the association and subject to all its existing liabilities. If the former state of facts prevailed, however, then there must have been some contract between the two corporations by which the defendant "took over" the assets and "assumed" the liabilities of the association.

The Code of Civil Procedure requires that the complaint should contain a plain and concise statement of the facts constituting the plaintiff's cause of action. A very material fact in the plaintiff's cause of action in this case is the manner and method by which the defendant took over the business of the old association and assumed the contracts of the old associates. If this was done by a contract between the two companies, that fact should be alleged, and the contract

should be recited, or its substance set out. If it took over the business and assumed the contracts of the old association by operation of law, pursuant to the provisions of the statute above referred to, that is a material fact which should be set out in the complaint. This conclusion does no violence to the rule that the facts may be pleaded according to their legal effect, and that it is unnecessary to plead the circumstances and the evidence. With respect to this whole matter, the complaint does not contain a single allegation of fact; the only allegations upon the subject being allegations, not of fact, but of legal conclusions.

The demurrer should be sustained, with leave to the plaintiff to amend his complaint upon payment of the costs of the action, to be taxed, within 20 days after entry of judgment.